UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
BEATRICE MARSEILLE,

                                Plaintiff,

against-                                         **COMPLAINT**

THE MOUNT SINAI HOSPITAL, and         **JURY TRIAL**
DENISE O'DEA                           **DEMANDED**

                              Defendant(s).
-----------------------------------------------------------------------X

      Plaintiff Beatrice Marseille, by and through her attorneys, Eisenberg & Baum, LLP, as

and for her Complaint against Defendants alleges the following:

## PARTIES

      1.      Plaintiff Beatrice Marseille is a woman who has been employed by The Mount

Sinai Hospital since 2000.

      2.      Defendant The Mount Sinai Hospital (hereinafter "Mt. Sinai") is a New York for-

profit corporation that maintains that owns and operates a hospital in the City and State of New

York.

## JURISDICTION AND VENUE

      3.      This Court has original jurisdiction over Plaintiff's federal law claims under 28

U.S.C. §§ 1331, 1343, and 29 U.S.C. § 201 *et seq.* The Court has supplemental jurisdiction over

Plaintiff's New York State and New York City law claims under 28 U.S.C. § 1367(a).

      4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

      5.      Plaintiff demands a trial by jury in this action.

**FACTS**

6.      Plaintiff is a black woman from Haiti who is 51 years old.

7.      Plaintiff has been employed by defendants as a Nurse/Nurse Practitioner at Mt. Sinai since 2000.

8.      Plaintiff began her employment with Mt. Sinai as a Nurse in September 2000.

9.      In September 2005, Plaintiff was a Nurse Practitioner in the surgical unit at Mt. Sinai.

10.      In 2013, Plaintiff began working in the Oncology department at Mt. Sinai as a Nurse Practitioner. Throughout all relevant times, Plaintiff fully performed her duties as a Nurse Practitioner.

11.      After Plaintiff's employment ended, many of her colleagues even submitted letters asking for her reinstatement. See letters attached hereto as Exhibit "A".

12.      In June 2015, Mt. Sinai hired Denise O'Dea, who is Caucasian, as the Lead Nurse Practitioner. Ms. O'Dea became Plaintiff's direct supervisor.

13.      Prior to Ms. O'Dea being Plaintiff's supervisor, Plaintiff had not received any write-ups.

14.      Ms. O'Dea monitored Plaintiff's reports at work more closely than Plaintiff's younger, Caucasian and/or non-Haitian coworkers.

15.      Ms. O'Dea was out to get Plaintiff because of her race/national origin, age and subsequently because of her disability.

16.      In November 2015, Ms. O'Dea purposely scheduled Plaintiff to work 6 back to back shifts around the holidays to make her working conditions difficult. Ms. O'Dea did not

schedule Plaintiff's non-Haitian and/or Caucasian coworkers in this manner. It was discriminatory for Ms. O'Dea to schedule Plaintiff in this fashion.

17.     In November 2015, because Plaintiff is black and from Haiti, Ms. O'Dea told Plaintiff that her "approach is very aggressive" even though Plaintiff did not use an aggressive tone and/or approach. Ms. O'Dea did not characterize Plaintiff's non-Haitian and/or Caucasian coworkers in this manner. Her characterization of Plaintiff's tone was discriminatory.

18.     In June 2016, Ms. O'Dea asserted that Plaintiff did not provide pain medication to a patient even though the patient advised Plaintiff that they did not want any pain medication. Ms. O'Dea only made this allegation against Plaintiff to wrongfully discipline her because of her age and race/national origin demonstrated by the fact that younger, Caucasian and/or non-Haitian Nurse Practitioners were not accused of this when they did not give pain medication to patients who advised that they did not wish to receive them.

19.     In February 2017, Ms. O'Dea wrongfully disciplined Plaintiff because of her age and race/national origin and alleging that she failed to note that an MRI was not done for a patient during Plaintiff's shift, even though Plaintiff advised the next shift that the MRI needed to be completed. Ms. O'Dea did not write-up Plaintiff's younger, Caucasian and/or non-Haitian coworkers for this exact same procedure.

20.     In March 2017, Plaintiff was on vacation and injured her back. Plaintiff returned to work as scheduled, but due to her back injury, she was not able to continue working.

21.     Plaintiff was placed on medical leave pursuant to the Family and Medical Leave Act ("FMLA") from March 2017 through August 2017.

22.     When Plaintiff complained to her about the above mistreatment, Ms. O'Dea retaliated against her.

3

23.     While Plaintiff was out on leave, Ms. O'Dea called Plaintiff in May 2017 and continually thereafter in a harassing manner to ask when she would be returning to work even though Plaintiff advised that she required additional leave due to her back injury/disability.

24.     In August 2017, Ms. O'Dea wrongfully and falsely sent out a chart to the Nurse Practitioners in Plaintiff's department and wrote that Plaintiff had "resigned" due to Plaintiff's request for additional leave and due to her age. It was also done to intimidate and retaliate against Plaintiff due to her request for leave based on her disability.

25.     On her very first day back from her disability leave, Plaintiff was given a final warning, with suspension pending an investigation, regarding alleged failure to adhere to patient protocols. This warning was clearly given to Plaintiff because of her age, race/national origin, and for taking disability leave and in retaliation.

26.     Plaintiff was wrongfully and falsely suspended without pay from September 8, 2017 through September 15, 2017 for allegedly failing to document findings and plan of care; failure to manage basic medical needs; and failing to provide safe patient care. Each of these allegations is false and was only asserted in retaliation against Plaintiff because of her age, race/national origin, and for taking disability leave.

27.     On September 15, 2017, Ms. O'Dea terminated Plaintiff based on the same false allegations for which she was suspended. The termination was in retaliation against Plaintiff because of her age, race/national origin, and for taking disability leave.

28.     In the latter portion of Plaintiff's period of employment, Ms. O'Dea was her supervisor and subjected her to harassment on a regular basis because of her age, race/national origin and disability.

4

29.     At the time of her termination, Plaintiff was the only black woman in her department.

30.     At the time of her termination, Plaintiff was the only Haitian woman in her department.

31.     After Plaintiff's termination, Mt. Sinai hired a Caucasian in her 30s to replace Plaintiff.

32.     Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunities Commission ("EEOC") and on October 3, 2018, Plaintiff was sent a Right to Sue letter by EEOC.  This lawsuit was timely filed thereafter.

33.     Plaintiff also filed union grievances because of the above conduct but intends to withdraw those grievances.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Racial Harassment and Hostile Workplace)**

34.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

35.     Title 8 of the New York City Administrative Code, §8-107, Title VII of the United States Code and Section 296.1(a) of the New York Human Rights Law, prohibit racial harassment in the workplace.

36.     Plaintiff deserved to retain her employment and did not do anything to merit discharge or discipline and/or to be subject to this discriminatory conduct.  Nevertheless, Defendants denied Plaintiff the benefits of employment, including all favorable conditions and emoluments thereof and created and allowed to exist a hostile, intolerable workplace imposed upon her by the conduct of its employees and managers, of which it was well aware and without any non-discriminatory basis therefor and wrongfully disciplined her and retaliated against her.

5

37.     Defendants' actions were taken under circumstances giving rise to an inference of discrimination.  The corporate defendants aided and abetted their employees in carrying out discriminatory actions against Plaintiff which created an intolerable work environment based on racial harassment and, acting with executive authority in their official capacities, took actions in regard to Plaintiff that violated Title VII and Section 296.1(a).

38.     As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff suffered adverse employment consequences. Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

### AS AND FOR A SECOND CAUSE OF ACTION
### (Race/National Origin Discrimination)

39.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

40.     Title 8 of the New York City Administrative Code, §8-107, Title VII of the United States Code and Section 296.1(a) of the New York Human Rights Law, prohibit discrimination in employment based upon race/national origin.

41.     Plaintiff was treated differently than workers who were not African-American, since they were not subjected to unwanted racial communication.

42.     Plaintiff deserved to retain her employment and did not do anything to merit discharge or discipline and/or to be subject to this discriminatory conduct.  Nevertheless, Defendants denied Plaintiff the benefits of employment, including all favorable conditions and emoluments thereof by discharging her because of hostility to Plaintiff based on her race/national origin and without any non-discriminatory basis thereof and wrongfully disciplined her and retaliated against her.

6

43.     Defendants' actions were taken under circumstances giving rise to an inference of discrimination.  The corporate defendants aided and abetted their employees in carrying out discriminatory actions against Plaintiff based upon her gender and, acting with executive authority in their official capacities, took actions in regard to Plaintiff that violated Title VII and Section 296.1(a).

44.     As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff suffered adverse employment consequences.  Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

## AS AND FOR A THIRD CAUSE OF ACTION
### (42 U.S.C. § 1981 – Intentional Discrimination and Hostile Work Environment)

45.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

46.     By the conduct described above, Defendants and intentionally deprived Plaintiff, a black woman, of the same rights enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, of her contractual relationship with her employer, in violation of 42 U.S.C. § 1981 and wrongfully disciplined her and retaliated against her.

47.     Plaintiff was also subjected to harassment by Defendants that was motivated by Plaintiff's race and protected status as a black woman in violation of Plaintiff's rights afforded by 42 U.S.C. § 1981.

48.     The race-based discriminatory conduct by Defendants was so severe and pervasive as to create a hostile and abusive work environment for Plaintiff.

49.     Defendants knew or reasonably should have known about the hostile work environment within the company and failed to take appropriate remedial actions.

50.     Defendants directly created or participated in the creation of the hostile and abusive work environment, exhibited gross negligence in supervising subordinates who directly created or participated in the creation of the hostile and abusive work environment, and/or failed to take action upon receiving information about a hostile and abusive work environment that was occurring in violation of 42 U.S.C. § 1981.

51.     As a result of the discrimination in violation of 42 U.S.C. § 1981 by Defendants, Plaintiff suffered adverse employment consequences. Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

52.     In their race-based discrimination in violation of 42 U.S.C. § 1981, Defendants have acted with malice or deliberate indifference to the rights of Plaintiff, entitling her to an award of punitive damages.

53.     Pursuant to 42 U.S.C. §§ 1981 and 1988, Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Disability Discrimination)

54.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

55.     The Americans with Disabilities Act ("ADA"), Section 296.1(a) of the New York Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, and Title 8 of the New York City Administrative Code, §8-107, prohibit discrimination in employment on the basis of a disability.

56.     Plaintiff's medical condition meets the requirements of the definition of a disability under the statutes cited above.

8

57.    Defendants' actions as described herein violated those provisions of the statute which prohibit discrimination in employment on the basis of a disability.

58.    Plaintiff deserved to retain her employment with Defendants and did not do anything to merit discharge or discipline.  Nevertheless, Defendants denied Plaintiff the benefit of employment, including all favorable conditions and emoluments thereof and refused to provide Plaintiff with a reasonable accommodation to allow her to continue her work in a safe work environment.

59.    As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered adverse employment consequences.  Plaintiff was caused to endure severe emotional pain and trauma, all to her detriment.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Age Discrimination)

60.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

61.    Title 8 of the New York City Administrative Code, §8-107, The Age Discrimination in Employment Act of 1967 ("ADEA") and Section 296.1(a) of the New York Human Rights Law, prohibit discrimination in employment based upon age.

62.    Defendant denied Plaintiff the benefit of employment, including all favorable conditions and emoluments thereof in favor of younger employees under the age of 40 and created and allowed to exist a hostile, intolerable workplace based on discrimination based on age that was imposed upon Plaintiff by the conduct of Defendant's employees and managers, of which they were well aware of and without any non-discriminatory basis therefor and wrongfully disciplined her and retaliated against her and further terminated Plaintiff because she was over the age of 40.

9

63.    Defendant's actions were taken under circumstances giving rise to an inference of discrimination.

64.    As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered adverse employment consequences.  Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma and anxiety, all to her detriment.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Retaliation)

65.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

66.    Title 8 of the New York City Administrative Code, §8-107, Section 296.1(a) of the New York Human Rights Law, 42 U.S.C. § 1981, Title VII, the ADA, and the ADEA prohibit retaliation against an employee who seeks to assert civil rights.

67.    Plaintiff made complaints to Defendants about the mistreatment based on race/national origin, disability and age discrimination inflicted upon her by employees and managers of Defendants.  In response, Defendants did not resolve her complaints, but rather, Plaintiff was subjected to continued and additional mistreatment, all with the knowledge and approval of Defendants for the purpose of punishing her for attempting to assert his rights.

68.    Defendants' actions were taken under circumstances giving rise to an inference of discrimination.  The corporate defendants aided and abetted their employees in carrying out discriminatory actions against Plaintiff which created an intolerable work environment based on discrimination based on race/national origin, disability and age, acting with executive authority in their official capacities, took actions in regard to Plaintiff that violated Title 8 of the New

York City Administrative Code, §8-107, Section 296.1(a) of the New York Human Rights Law, Title VII, the ADA, and the ADEA.

69.    As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff suffered adverse employment consequences. Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

A.    Enter a declaratory judgment, stating that Defendant's practices, policies and procedures subjected Plaintiffs to discrimination based on race/national origin, disability and age in violation of Title 8 of the New York City Administrative Code, §8-107, Section 296.1(a) of the New York Human Rights Law, Title VII, the ADA, and the ADEA.

B.    Enjoin Defendant from implementing or enforcing any policy, procedure, or practice that denies employees of any race/national origin, disability and age the full and equal enjoyment of Defendant's benefits, pay increases, promotional opportunities and advancement within the company, and specifically enjoin them:

        i.    to develop, implement, promulgate, and comply with a policy providing for the training of each and every employee and manager in the civil rights of employees in the workplace, including but not limited to harassment and discrimination based upon race/national origin, disability and age, and retaliation;

        ii.    to develop, implement, promulgate, and comply with a policy providing for reporting and investigation of complaints regarding civil rights abuses,

including but not limited to harassment and discrimination based upon race/national origin, disability and age and retaliation; and

iii.    to develop, implement, promulgate, and comply with a policy providing for disciplinary measures to be imposed upon any person found responsible for civil rights abuses, including but not limited to harassment and discrimination based upon race/national origin, disability and age and retaliation;

C.    On the First Cause of Action, enter judgment against the named defendant and an award of compensatory damages for back pay, front pay, past and future employment benefits, damages for emotional distress, punitive and/or exemplary damages, attorneys' fees, pre and post-judgment interest, in an amount, in excess of the jurisdictional limits of any other court, in an amount to be determined at trial by the jury, and further relief as this Honorable Court deems just, equitable and proper;

D.    On the Second Cause of Action enter judgment against the named defendant and an award of compensatory damages for back pay, front pay, past and future employment benefits, damages for emotional distress, punitive and/or exemplary damages, attorneys' fees, pre and post-judgment interest, in an amount, in excess of the jurisdictional limits of any other court, in an amount to be determined at trial by the jury, and further relief as this Honorable Court deems just, equitable and proper;

E.    On the Third Cause of Action enter judgment against the named defendant and an award of compensatory damages for back pay, front pay, past and future employment benefits, damages for emotional distress, punitive and/or exemplary damages, attorneys' fees, pre and post-judgment interest, in an amount, in excess of the jurisdictional limits of any other court, in

12

an amount to be determined at trial by the jury, and further relief as this Honorable Court deems just, equitable and proper;

       F.     On the Fourth Cause of Action enter judgment against the named defendant and an award of compensatory damages for back pay, front pay, past and future employment benefits, damages for emotional distress, punitive and/or exemplary damages, attorneys' fees, pre and post-judgment interest, in an amount, in excess of the jurisdictional limits of any other court, in an amount to be determined at trial by the jury, and further relief as this Honorable Court deems just, equitable and proper;

       G.     On the Fourth Cause of Action enter judgment against the named defendant and an award of compensatory damages for back pay, front pay, past and future employment benefits, damages for emotional distress, punitive and/or exemplary damages, attorneys' fees, pre and post-judgment interest, in an amount, in excess of the jurisdictional limits of any other court, in an amount to be determined at trial by the jury, and further relief as this Honorable Court deems just, equitable and proper; and

       H.     On the Fourth Cause of Action enter judgment against the named defendant and an award of compensatory damages for back pay, front pay, past and future employment benefits, damages for emotional distress, punitive and/or exemplary damages, attorneys' fees, pre and post-judgment interest, in an amount, in excess of the jurisdictional limits of any other court, in an amount to be determined at trial by the jury, and further relief as this Honorable Court deems just, equitable and proper.

Dated: December 21, 2018
    New York, New York

                          EISENBERG & BAUM, LLP

                    By: _____/s/ Eric Baum_____
                          Eric M. Baum, Esq. (EB-5493)
                          Sagar Shah, Esq.
                          Attorneys for Plaintiff
                          24 Union Square East
                          Fourth Floor
                          New York, NY 10003
                          (212) 353-8700

# EXHIBIT A

October 11, 2017

Rachel Harris
NYSNA

Dear Ms. Harris,

This letter is in reference to Beatrice Marseille , a colleague of the BMT Nurse Practitioners. We would like to share our thoughts regarding how she conducted herself and took care of our patients. Beatrice covered the BMT patients overnight. At the end of our shift we would sign out to  Beatrice any issues to be followed up. She was also responsible for addressing any issues occurring overnight.

It has been our experience that Beatrice consistently followed up on anything we requested and appropriately addressed any issues.

Beatrice conducted herself in a professional manner. She was always helpful and interested in the patients.

We are submitting this letter in support of Beatrice Marseille and her work related to the BMT Patients.

Sincerely,
BMT Nurse Practitioners

_Felicia Macalaguim_, NP
Felicia Macalaguim

_Elaine Gorman_ NP
Elaine Gorman NP.

_Mary T. McClelland_ NP.
Mary T. McClelland NP.

_Priscilla Koh_ NP
Priscilla Koh. NP

_Keiko Wahlin_, NP.
Keiko Wahlin , NP.

October 10, 2017

To Whom It May Concern,

I have known Beatrice Marseille in her capacity as nurse practitioner for four years. I worked as a daytime shift inpatient nurse practitioner on the bone marrow transplant service at Mount Sinai for four years. During this time, Beatrice worked as an overnight inpatient nurse practitioner covering oncology, including the bone marrow transplant service. My interactions with her were frequent as she often provided overnight coverage for my patient load.

I found Beatrice to be a responsible and knowledgeable nurse practitioner. She always followed through on instructions I gave during sign out including labs to check, imaging results to follow up, and antibiotic coverage. When patients had unexpected events overnight or required a change in their level of care, she contacted the transplant team and escalated care quickly. Upon my arrival in the morning, she always provided prompt and thorough sign out regarding overnight events.  Despite providing overnight coverage to a large number of patients, I noted that she formed long lasting bonds with patients and she remembered minute details of patient's histories and events.

In addition to excellent patient care, Beatrice also provided mentorship for me. As an experienced NP with decades of experience under her belt, Beatrice took the time to explain several concepts to me when I was a brand new NP. I remember being nervous during end of shift sign out because I was just learning how to manage emergencies such as sepsis and respiratory distress and I was not sure if I was signing out everything that I needed to.  Beatrice would sit down with me and walk me through possible scenarios and how she would handle them and her rationale. I always left the hospital feeling like my patients were in good hands.

For any questions or comments regarding the above information, please feel free to contact me at (818) 903-4788 or stefmancia@gmail.com.


Thank you,


Stefania Mancia

October 6, 2017

To Whom It May Concern:

We have known Beatrice Marseille since she started working as a Nurse Practitioner in the Hematology Oncology inpatient practice. We have worked collaboratively in the care of our mutual patients.

Beatrice is highly intelligent and has good analytical skills. She has a detailed understanding of clinical issues. She has excellent communication skills. She demonstrates good teamwork skills and has always been willing to assist her colleagues when in need.  She has demonstrated great  motivation, perseverance and  initiative.

She has demonstrated intellectual creativity necessary to complete her job in this very challenging position. For several years she has worked as the only Nurse Practitioner at nights covering on average fifty to sixty acutely ill patients some of whom had to be transferred to an ICU setting. In addition she has had to admit patients to the unit.

We are surprised at her termination and the circumstances under which she has left. It is surprising that the administration is being punitive without offering a remedy. Whatever her faults were there was no indication that any effort was made to assist her in improving that deficit. Mount Sinai Hospital offers several self-improvement courses.

We support the reinstatement of Beatrice to our service.

Respectfully,

*(signatures)*