USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/5/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
BEATRICE MARSEILLE,                          :
                                             :
                              Plaintiff,     :
                                             :
            -against-                        :           18-CV-12136 (VEC)
                                             :
                                             :           OPINION AND ORDER
                                             :
MOUNT SINAI HEALTH SYSTEM, INC.,             :
MOUNT SINAI HOSPITALS GROUP, INC.,           :
THE MOUNT SINAI HOPSITAL, and                :
DENISE O'DEA ,                               :
                                             :
                              Defendants.    :
------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Beatrice Marseille sued her employer, The Mount Sinai Hospital, Mount Sinai Health

System, Inc., Mount Sinai Hospitals Group, Inc. (collectively "Mount Sinai"), and her

supervisor, Denise O'Dea, for employment discrimination.  *See generally* Am. Compl.  Plaintiff

asserted claims under federal, state, and local law for racial, national origin, age, and disability

discrimination, hostile work environment, and retaliation.[1]  Defendants moved for summary

judgment on all claims.  *See* Notice of Mot., Dkt. 48.  For the following reasons, Defendants'

motion for summary judgment is GRANTED.

---

[1]     Plaintiff asserted claims pursuant to Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1981; Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 *et seq.*; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*  Am. Compl., ¶¶ 37–82.

1

## BACKGROUND[2]

Beatrice Marseille, a Haitian, black woman in her early fifties, worked as a nurse for Mount Sinai, a system of hospitals in New York City, from 2000 until September 15, 2017. Defs.' 56.1 Stmt. ¶¶ 1, 99–100; Pl.'s 56.1 Resp. ¶¶ 1, 99–100, 133–34, 206; Defs.' 56.1 Reply ¶¶ 133–34, 206.  Plaintiff began her career at Mount Sinai as a part-time Clinical Nurse.  Defs.' 56.1 Stmt. ¶ 1; Pl.'s 56.1 Resp. ¶ 1.  In 2005, she became a Nurse Practitioner ("NP") and began working full-time in the Department of Surgery.  Defs.' 56.1 Stmt. ¶ 2; Pl.'s 56.1 Resp. ¶ 2.  In 2007, she transferred to an NP position in the Department of Rehabilitation Medicine.  Defs.' 56.1 Stmt. ¶ 3; Pl.'s 56.1 Resp. ¶ 3.  As an NP, Plaintiff's duties included assessing patient needs, ordering and interpreting diagnostic and laboratory tests, diagnosing illness, prescribing medication, and formulating treatment plans.  Defs.' 56.1 Stmt. ¶ 13; Pl.'s 56.1 Resp. ¶ 13.

In 2013, Plaintiff transferred to a full-time, nightshift NP position in the Hematology/Oncology Unit ("HemOnc").  Defs.' 56.1 Stmt. ¶ 4; Pl.'s 56.1 Resp. ¶ 4.  Plaintiff was initially supervised by Dr. Max Sung, who was responsible for evaluating her performance. Defs.' 56.1 Stmt. ¶¶ 26–27, 29; Pl.'s 56.1 Resp. ¶¶ 26–27, 29.  Plaintiff's first evaluation by Dr. Sung occurred in October 2013; he stated, *inter alia*, that "improvement [was] needed in documenting relevant history in oncology patients in admitting notes."  Defs.' 56.1 Stmt. ¶¶ 28,

---

[2]     All facts described herein are undisputed unless otherwise stated.  In certain instances in which either party asserted a dispute on facts set forth in the other's Local Civil Rule 56.1 Statement of Undisputed Facts, the purported objection was nonresponsive to the asserted fact, and therefore, the Court deems those facts to be undisputed.  The Court will refer to the parties' submissions as follows:  Plaintiff's Amended Compl., Dkt. 3, as "Am. Compl."; Defendants' Memorandum of Law in support of its motion for summary judgment, Dkt. 52, as "Defs.' Mem."; Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts, Dkt. 51, as "Defs.' 56.1 Stmt."; Plaintiff's Memorandum of Law in opposition to the motion for summary judgment, Dkt. 57, as "Pl.'s Opp."; Plaintiff's Statement of Contested Facts Pursuant to Local Civil Rule 56.1, Dkt. 58, as "Pl.'s 56.1 Resp."; Defendants' Reply Memorandum of Law in further support of its motion, Dkt. 61, as "Defs.' Reply"; and Defendants' Local Rule 56.1 Response to Plaintiff's Counterstatement, Dkt. 60, as "Defs.' 56.1 Reply."  The Court will refer to Plaintiff's deposition, Dkt. 49-2, as "Marseille Dep."; Declaration of Beatrice Marseille, Dkt. 56, as "Marseille Decl."; and Declaration of Laura Ann Butler, Dkt. 50, as "Butler Decl."

30; Pl.'s 56.1 Resp. ¶¶ 28, 30.  Dr. Sung's March 2014 review of Plaintiff stated that her

"[a]dmission histories need[ed] more detail in subjective complaints" and that her

"[a]ssessment[s] require more attention to all the issues."  Defs.' 56.1 Stmt. ¶¶ 33–34; Pl.'s 56.1

Resp. ¶¶ 33–34.  Dr. Sung's December 2014 review of Plaintiff noted that there was "room for

improvement in [Plaintiff's] data collection with respect to presenting issues as well as problem

analysis."  Defs.' 56.1 Stmt. ¶ 35; Pl.'s 56.1 Resp. ¶ 35.

In or around June 2015, Denise O'Dea became the HemOnc Clinical Program Manager

and Plaintiff's immediate supervisor.  Defs.' 56.1 Stmt. ¶ 9; Pl.'s 56.1 Resp. ¶ 9.  Between 2015

and 2017, O'Dea contacted Plaintiff on at least four occasions to discuss Plaintiff's repeated

deficiencies with documentation and patient care.  Defs.' 56.1 Stmt. ¶¶ 36–53; Pl.'s 56.1 Resp.

¶¶ 36–53.[3]  In July 2015, O'Dea emailed Plaintiff about her decision not to isolate a newly

admitted patient who had a history of severe, antibiotic-resistant infection and her failure to

document the basis for her decision.  Defs.' 56.1 Stmt. ¶¶ 36, 38; Pl.'s 56.1 Resp. ¶¶ 36, 38.  In

November 2015, O'Dea again emailed Plaintiff concerning Plaintiff's failure to document her

assessment and care plan for two patients; in response, Plaintiff acknowledged the failure and

wrote, "[m]oving forward I will make sure to write for this kind of event."  Defs.' 56.1 Stmt. ¶¶

39–41; Pl.'s 56.1 Resp. ¶¶ 39–41.  In June 2016, O'Dea emailed Plaintiff about Plaintiff's failure

to document certain decisions concerning a patient's plan of care; Plaintiff again acknowledged

the failure to O'Dea, stating that "my admission note may not have had a specific plan of care for

---

[3]      Although Plaintiff disputes that her documentation and care were substandard, Pl.'s 56.1 Resp. ¶¶ 36–53,
the issue under the relevant anti-discrimination laws is not whether, in fact, Plaintiff's performance was substandard
but whether Defendants' assessment of her performance was the "actual justification" for the actions they took.  *See
Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 (2d Cir. 2015) (noting that absent evidence of discrimination,
the court need not consider, "[e]ven under the NYCHRL, the mere fact that that a plaintiff may disagree . . . and
think that her behavior was justified" (cleaned up)); *Miller v. Nat'l Ass'n of Secs. Dealers, Inc.*, 703 F. Supp. 2d 230,
247 (E.D.N.Y. 2010) ("The relevant inquiry is not whether the performance-based justification for plaintiff's
termination articulated by defendant is accurate or fair, but whether plaintiff can show any evidence that it was not
the actual justification.").

the patient['s] pain."  Defs.' 56.1 Stmt. ¶¶ 42–46; Pl.'s 56.1 Resp. ¶¶ 42–46.  Finally, in February

2017, O'Dea emailed Plaintiff requesting information about the care Plaintiff provided to an

overnight patient, and Plaintiff responded, "I understand that I did not document my care in

EPIC and it was oversight."  Defs.' 56.1 Stmt. ¶¶ 47–50; Pl.'s 56.1 Resp. ¶¶ 47–50.

　　　Plaintiff alleges that she "was treated less well than other employees by [O'Dea] because

of her race, national origin, age, and disability," in that she was "subjected to discipline and

termination" that her "younger, Caucasian and/or non-Haitian and non-disabled coworkers were

not."  Pl.'s Opp. at 13–14.  Plaintiff also contends that she was subjected to a hostile work

environment because, in late 2015, "O'Dea told her that [Plaintiff's] 'approach is very

aggressive,'" and "began a campaign of scrutinizing Plaintiff's work and writing her up for

alleged documentation issues," neither of which she did for "younger, Caucasian and/or non-

Haitian and non-disabled coworkers."  Pl.'s Opp. at 15–16; Pl.'s 56.1 Resp. ¶ 147.  Also in 2015,

O'Dea scheduled Plaintiff to work six consecutive days around the holidays, although she then

changed the schedule at Plaintiff's request.  Defs.' 56.1 Stmt. ¶ 128; Pl.'s 56.1 Resp. ¶ 128, 145;

Defs.' 56.1 Reply ¶ 145.

　　　On February 21, 2017, after several more issues with Plaintiff's documentation and

patient care, Marseille received a warning ("First Warning") advising her that she "failed to

document assessments and interventions taken in regard to multiple patients during the night

shift" and that "[f]uture violations of policy will result in progressive discipline up to and

including final warning."  Defs.' 56.1 Stmt. ¶¶ 51–56; Pl.'s 56.1 Resp. ¶¶ 51–56; Marseille Dep.

Ex. 19.  O'Dea received permission to place Plaintiff on a performance improvement plan

("PIP") and prepared a PIP for Plaintiff.  Defs.' 56.1 Stmt. ¶¶ 57–59; Pl.'s 56.1 Resp. ¶¶ 57–59.

Although O'Dea met with Plaintiff to discuss the PIP, Plaintiff declined to sign the PIP because

she wanted her union delegate present to do so.  Defs.' 56.1 Stmt. ¶¶ 59–60; Pl.'s 56.1 Resp. ¶¶

59–60.  Had the PIP been implemented, Plaintiff's "progress would [have] be[en] monitored

over a three-month period."  Pl.'s 56.1 Resp. ¶ 162; Defs.' 56.1 Reply ¶ 162.

According to Defendants, Plaintiff's documentation errors and substandard care

continued through March 2017.  Defs.' 56.1 Stmt. ¶ 61 (alleging nine incidents in March 2017);

Pl.'s 56.1 Resp. ¶ 61.  At the end of March, O'Dea and her supervisor received permission from

Human Resources to issue Plaintiff a Final Warning because of Plaintiff's continued

performance shortcomings.  Defs.' 56.1 Stmt. ¶¶ 54, 75–76; Pl.'s 56.1 Resp. ¶¶ 54, 75–76.  On

March 30, 2017, before O'Dea issued the Final Warning, Plaintiff called out with a back injury;

she went on leave pursuant to the Family and Medical Leave Act ("FMLA") until August 28,

2017.  Defs.' 56.1 Stmt. ¶¶ 77–78; Pl.'s 56.1 Resp. ¶¶ 77–78, 167; Defs.' 56.1 Reply ¶ 167.

While Plaintiff was on leave, O'Dea called her three times to determine when she would return

to work.  Pl.'s 56.1 Resp. ¶ 168; Defs.' 56.1 Reply ¶ 168; Marseille Dep. at 151–52.  In August

2017, while Plaintiff was still on leave, O'Dea distributed a schedule to the nursing staff that

erroneously indicated that Plaintiff had resigned.  Pl.'s 56.1 Resp. ¶ 170; Defs.' 56.1 Reply ¶

170.  On August 24, 2017, shortly before returning to work, Plaintiff emailed O'Dea and her

supervisors stating, *inter alia*, that "she was tired of O'Dea's constant intimidation over the

years."  Pl.'s 56.1 Resp. ¶ 174; Defs.' 56.1 Reply ¶ 174.

Once Plaintiff returned to work, O'Dea issued her the Final Warning.  Defs.' 56.1 Stmt. ¶

79; Pl.'s 56.1 Resp. ¶ 79.  On September 8, 2017, Plaintiff was suspended pending investigation;

O'Dea and her supervisor investigated Plaintiff's charts and determined that she should be

terminated.  Defs.' 56.1 Stmt. ¶¶ 94–96; Pl.'s 56.1 Resp. ¶¶ 94–96.  On September 15, 2017,

pursuant to the recommendation of Human Resources, Plaintiff was given the choice to transfer

to a more closely supervised staff nurse position, resign, or be terminated.  Defs.' 56.1 Stmt. ¶¶ 54, 98–100; Pl.'s 56.1 Resp. ¶¶ 54, 98–100.  Plaintiff chose termination.  Defs.' 56.1 Stmt. ¶ 100; Pl.'s 56.1 Resp. ¶ 100.  Plaintiff contends that, following her termination, she was replaced by a younger white woman named Rachel Sprung; Defendants dispute that Sprung replaced Plaintiff. Defs.' 56.1 Stmt. ¶¶ 117–18; Pl.'s 56.1 Resp. ¶¶ 117–18; Defs.' Mem. at 18.

On October 3, 2018, Plaintiff received a Right to Sue letter from the United States Equal Employment Opportunities Commission ("EEOC") in response to her Charge of Discrimination. Am. Compl. ¶ 35.  Plaintiff filed this lawsuit on December 21, 2018.  *See generally* Compl., Dkt. 1.

## DISCUSSION

### I.      Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Scott v. Harris,* 550 U.S. 372, 380 (2007) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). To defeat summary judgment, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  *Sista v. CDC IXIS N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).  Courts "construe the facts in the light most favorable to the nonmoving party and resolve all ambiguities and draw all reasonable inferences against the movant."  *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (per curiam) (cleaned up).

A district court is "under no obligation to engage in an exhaustive search of the record" when considering a motion for summary judgment. *Jones v. Goord*, 435 F. Supp. 2d 221, 259 (S.D.N.Y. 2006) (citing *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470–71 (2d Cir. 2002)); *see also* Fed. R. Civ. P. 56(c)(3); *Lee v. Alfonso*, 112 F. App'x 106, 107 (2d Cir. 2004). A party opposing a motion for summary judgment must "specifically respond to the assertion of each purported undisputed fact . . . and, if controverting any such fact, [must] support its position by citing to admissible evidence in the record." *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014); *see also* Fed. R. Civ. P. 56(c)(1)(A)–(B); *Kalola v. Int'l Bus. Machines Corp.*, No. 13-CV-7339, 2017 WL 5495410, at *4 (S.D.N.Y. Jan. 9, 2017) ("Plaintiff cannot 'expect the Court to comb the record to find evidence not highlighted in [Plaintiff's] motion papers — summary judgment is not a game of hide and seek.'" (citation omitted)). A court need not consider arguments that do not comply with these rules. *See Kalola*, 2017 WL 5495410, at *4.

## II.     Plaintiff Has Abandoned Her Federal and State Law Claims

Defendants moved for summary judgment on all of Plaintiff's claims. *See* Notice of Mot. at 1–2 (seeking dismissal of "the complaint in its entirety with prejudice"). In support, Defendants made specific arguments as to why they are entitled to summary judgment on each of Plaintiff's claims. *See, e.g.*, Defs.' Mem. at 13, 20, 23, 25. In response, Plaintiff failed entirely to respond to Defendants' arguments regarding Plaintiff's federal and state law claims, instead arguing only that she has satisfied her burden as to her NYCHRL claims. *See* Pl.'s Opp. at 11, 15, 16. Accordingly, Plaintiff has abandoned her federal and state law claims, and Defendants' motion for summary judgment is granted as to those claims.[4] *See Jackson v. Fed. Express*, 766

---

[4]     Even if Plaintiff had not abandoned her federal and state law claims, Defendants would be entitled to summary judgment on those claims. As discussed below, Plaintiff's NYCHRL claims do not survive summary judgment, and the "NYCHRL is . . . more lenient toward plaintiffs than its federal and state equivalents." *Dillon v.*

F.3d 189, 195 (2d Cir. 2014) (if a non-moving party submits "a partial response arguing that summary judgment should be denied as to some claims while not mentioning others," that response "may be deemed an abandonment of the unmentioned claims"); *see also Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) ("[Plaintiff] abandoned [hostile work environment claims] in the District Court by failing to argue that they should survive . . . summary judgment.").

### III.   Defendants' Motion for Summary Judgment Is Granted as to Plaintiff's NYCHRL Discrimination Claims[5]

In support of her discrimination claims, Plaintiff contends that O'Dea discriminated against her based on her race, national origin, age, and disability by subjecting her to discipline and termination that her "younger, Caucasian and/or non-Haitian and non-disabled coworkers" did not face.  Pl.'s Opp. at 11.  Plaintiff's position is that her documentation and care were

---

*Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 654 (E.D.N.Y. 2015); *see also, e.g.*, *Boonmalert v. City of New York*, 721 F. App'x 29, 32 (2d Cir. 2018) (comparing NYCHRL to stricter ADEA standard); *Piligian v. Icahn Sch. of Med.*, 490 F. Supp. 3d 707, 717–19 (S.D.N.Y. 2020) (comparing NYCHRL to stricter standards imposed by Rehabilitation Act, NYSHRL, and ADA); *White v. Pacifica Found.*, 973 F. Supp. 2d 363, 378–79 (S.D.N.Y. 2013) (comparing NYCHRL to stricter standard under 42 U.S.C. § 1981).

Because Plaintiff has failed to raise a genuine dispute of material fact under the more lenient NYCHRL standard, she necessarily failed to raise a genuine dispute of material fact under the more stringent state and federal standards.  *See, e.g.*, *Bennett v. Health Mgt. Sys., Inc.*, 92 A.D.3d 29, 46 (1st Dep't 2011) ("Because plaintiff's claims fail under the more protective City HRL, they fail under the State HRL as well."); *see also Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 67 n.2, 69 (S.D.N.Y. 2016) (finding plaintiff's evidence of discrimination fell "short even of the more forgiving standards under the NYCHRL" and granting summary judgment to employer on discrimination claims arising from NYCHRL and federal law).

[5]   Notwithstanding the dismissal of Plaintiff's federal claims, the Court will exercise supplemental jurisdiction over Plaintiff's remaining claims for discrimination, hostile work environment, and retaliation brought pursuant to the NYCHRL.  Plaintiff's NYCHRL claims form "part of the same case or controversy" as Plaintiff's now-abandoned federal law claims, so the Court has discretion whether to exercise supplemental jurisdiction.  28 U.S.C. § 1367; *see Turner v. NYU Hosps. Ctr.*, 470 F. App'x 20, 25 (2d Cir. 2012) ("[NYCHRL] municipal discrimination and retaliation claims form part of the same case or controversy and are analytically identical to [Plaintiff]'s federal [Title VII] claims." (cleaned up)).  Courts must consider "judicial economy and convenience" when deciding whether to exercise supplemental jurisdiction.  *Benzinger v. NYSARC, Inc. N.Y.C. Chapter*, 385 F. Supp. 3d 224, 237 (S.D.N.Y. 2019).  In this case, where the parties have completed discovery and summary judgment briefing, it would be more efficient for this Court to exercise supplemental jurisdiction rather than force the Plaintiff to refile the case in state court.  *See id.* (exercising supplemental jurisdiction over NYCHRL claims after dismissing all federal claims "in the interests of judicial economy and convenience").

adequate, but "she was written up and ultimately terminated for following the same practices that

her younger, Caucasian and/or non-Haitian and non-disabled colleagues practiced." *Id.* at 15.

Plaintiff alleges that all of O'Dea's facially neutral actions support her claims of discrimination

based on each of her protected characteristics; she also argues that, specific to her claim for

disability discrimination, she was treated less well than her coworkers because she took "medical

leave due to disability" and was given a final warning upon her return. *Id.* at 14.  Plaintiff has

failed to create a genuine dispute of material fact as to her claims of discrimination based on any

of her protected characteristics.

### A.  Legal Standard

A plaintiff pursuing a claim for discrimination under the NYCHRL bears the initial

burden of establishing a prima facie case. *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75–

76 (2d Cir. 2015).  Establishing a prima facie case of discrimination under the NYCHRL

requires a plaintiff to show that (1) "she is a member of a protected class"; (2) "she is qualified

for her position"; (3) she "was treated differently from others in a way that was more than trivial,

insubstantial, or petty"; and (4) that she "was treated differently than a worker who was not a

member of [her] protected class." *Maynard v. Montefiore Med. Ctr.*, No. 18-CV-8877, 2021 WL

396700, at *5 (S.D.N.Y. Feb. 4, 2021).  Although courts must construe the NYCHRL "liberally

for the accomplishment of the uniquely broad and remedial purposes thereof," to prove a claim

of discrimination under the NYCHRL, a plaintiff still must "show[] that the [complained-of]

conduct is caused by a discriminatory motive." *Mihalik v. Credit Agricole Cheuvreux N. Am.,

Inc.*, 715 F.3d 102, 110 (2d Cir. 2013).  To meet her initial burden, a plaintiff need only

demonstrate "differential treatment — that she [was] treated 'less well' — because of a

discriminatory intent." *Id.*

If a plaintiff succeeds in establishing a prima facie case, "the defendant then has the opportunity to offer legitimate reasons for its actions." *Ya-Chen Chen*, 805 F.3d at 75–76.  If the defendant offers legitimate reasons, the burden shifts back to the plaintiff to provide evidence "either that the defendant's 'reasons were pretextual,' or that the defendant's stated reasons were not its sole basis for taking action, and that its conduct was based at least 'in part on discrimination.'" *Id.* at 76 (quoting *Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 120, 127 (1st Dep't 2012); *see also Hamburg v. N.Y. Univ. Sch. of Med.*, 155 A.D.3d 66, 73 (1st Dep't 2017) (same).  Put differently, a defendant is entitled to summary judgment based on an affirmative defense of non-discriminatory justifications "only if the record establishes as a matter of law that discrimination played *no* role in its actions."  *Nguedi v. Fed. Rsrv. Bank of N.Y.*, 813 F. App'x 616, 618 (2d Cir. 2020) (cleaned up).

## B.  Application

Plaintiff has failed to establish a prima facie case of discrimination.  Plaintiff does not dispute that she has no direct evidence of discrimination caused by her protected characteristics; she admitted that "neither O'Dea nor anyone else at Mount Sinai ever made any comments about her, or any other employee's, race, color, age, national origin or disability."  Defs.' 56.1 Stmt. ¶ 112; Pl.'s 56.1 Resp. ¶ 112.  Although direct evidence is not necessary to carry her burden, to establish a prima facie case, a "NYCHRL plaintiff . . . must still adduce evidence supporting an inference of discrimination."  *Henderson v. Physician Affiliate Grp. of N.Y. P.C.*, No. 18-CV-3430, 2019 WL 3778504, at *4 (S.D.N.Y. Aug. 12, 2019).

Plaintiff's claim of discrimination hinges almost entirely on her allegation that her non-black, non-Haitian, non-disabled, and younger colleagues were not subject to the same discipline and treatment as she was.  Pl.'s Opp. at 13–15.  Plaintiff, however, has failed to put forth any

evidence sufficient to create a genuine question of fact whether any similarly situated colleague was treated differently from Plaintiff.  Although Plaintiff identified by name many coworkers whom she alleges were treated better than she was, the record is devoid of any evidence of a Caucasian, non-Haitian, non-disabled, or younger colleague whose documentation was reviewed differently than Plaintiff's, *see* Marseille Dep. at 99–103, or who was not criticized or disciplined for documentation and treatment lapses similar to Plaintiff's, *see id.* at 134–38.  In fact, Plaintiff admits that: she has never seen any other employee's personnel file, *see id.* at 136; she never discussed with other employees O'Dea's scrutiny of their documentation or work performance, *see id.* at 99–103; and she never discussed with other employees whether they had been disciplined for behavior similar to Plaintiff's, *see id.* at 134–38.  In the absence of that type of evidence to provide a factual basis for her claims, Plaintiff cannot rely on what appears to be nothing more than her own unilateral assumptions about how coworkers outside of her protected classes were treated.  *See Henderson*, 2019 WL 3778504, at *5 (holding that plaintiff failed to make a prima facie case absent evidence of particular comparators and specific facts demonstrating differential treatment).  In short, Plaintiff has not produced evidence that tends to show that she was treated differently than any similarly situated worker who was not a member of her protected class.  At the summary judgment stage, Plaintiff's factually unsupported allegations that her coworkers received preferential treatment are insufficient to establish a prima facie case of discrimination under the NYCHRL.[6]

---

[6]    Plaintiff also points to the PIP as support for her claim of disability discrimination.  Pl.'s Opp. at 13.
Plaintiff argues that she "was treated less well than her non-disabled colleagues because . . . she was not offered the
same time to improve alleged deficiencies in documentation which she was being offered prior to going out on
disability leave." *Id.* at 14.  But this argument does not prove that Plaintiff "was treated differently from others,"
only that *she* was treated differently than *she* hypothetically would have been had she signed the PIP. *Fitchett v.*
*City of New York*, No. 18-CV-8144, 2021 WL 964972, at* 16 (S.D.N.Y. Mar. 15, 2021) (finding no prima facie case
of discrimination under NYCHRL when claims that others were treated more favorably were "factually
unsubstantiated").  Moreover, Plaintiff does not identify a single non-disabled colleague who was given the time

Only one of Plaintiff's contentions might conceivably rise to the level of creating an inference of discrimination.  Plaintiff contends that she was replaced by a younger Caucasian woman, Rachel Sprung.[7]  Defs.' 56.1 Stmt. ¶¶ 117–18; Pl.'s 56.1 Resp. ¶¶ 117–18.  Plaintiff explains that she knows she was replaced by Sprung because she saw Sprung's name on an email announcing the hiring of two employees in the HemOnc department at or around the time she was fired, Marseille Dep. 188–91, and because "former colleagues have advised [her] that Rachel Sprung has been working [her] old shifts at night since three days after [her] termination."  Marseille Decl. ¶ 81.  In response, Defendants dispute that Ms. Sprung replaced Plaintiff.  Butler Decl. ¶ 48.  According to Defendants, they have "been unable to find a qualified NP willing to work the night shift, and use[] per diems and moonlighters to work the overnight shift worked by [Plaintiff]."  Defs.' 56.1 Stmt. ¶ 116.

The fact that a plaintiff was replaced by someone outside the protected class is sufficient to raise an inference of discrimination at the *prima facie* stage in an NYCHRL case.  *Spires v. MetLife Grp., Inc.*, No. 18-CV-4464, 2019 WL 4464393, at *5 (S.D.N.Y. Sept. 18, 2019).  There must, however, be evidence to support the assertions about a plaintiff's replacement.  Thus, a New York court granted summary judgment to an employer when the plaintiff's NYCHRL age discrimination claim "rested entirely on the allegation that he was replaced by a younger employee" but "the record did not state the age of the woman who allegedly replaced him and contained only witnesses' 'guesses' that she was in her 'mid-40s.'"  *Sass v. Hewlett-Packard*,

---

specified in a PIP to improve, leaving her contention that she was treated worse than a non-disabled colleague devoid of a factual basis.

[7]     Plaintiff asserts that Sprung is "Caucasian and under 40 years old."  Pl.'s 56.1 Resp. ¶ 116.  Accordingly, even if the Court accepted Plaintiff's assertion that she was replaced by Sprung, that would establish a prima facie case of only race and age discrimination, not national origin or disability discrimination.

153 A.D.3d 1185, 1186 (1st Dep't 2017) (cleaned up).[8]  Plaintiff has no better evidence in this

case.  She provides no admissible evidence regarding Sprung's age and race, relying only on her

own testimony and declaration that "Ms. Sprung is Caucasian and I believe she is under 40 years

of age" to prove that Sprung is not a member of her protected classes.[9]  Marseille Decl. ¶ 81.

Accordingly, Plaintiff's prima facie case of race and age discrimination rests solely on her claim

that she was replaced by a younger white woman.  Because that claim is supported by only

"'conjecture' as to an alleged replacement employee's age [and race]" *Sass*, 153 A.D.3d at 1186,

it does not raise a triable question of fact in response to Defendants' motion for summary

judgment.

Putting aside the lack of admissible evidence regarding her purported replacement's age

and race, Plaintiff's position that Sprung replaced her is also unsubstantiated.  Basing a prima

facie case of discrimination on replacement by one outside of plaintiff's protected class does not

require proof that the alleged replacement filled the plaintiff's exact role; rather, a "plaintiff may

demonstrate that he was replaced by showing that, after his termination, some of his former

responsibilities were delegated to another employee, in addition to that other employee's own

responsibilities."  *Mazzeo v. Color Resols. Int'l, LLC*, 746 F.3d 1264, 1271 (11th Cir. 2014)

(finding triable issue of fact whether plaintiff was replaced by younger employee when younger

employee assumed responsibility for plaintiff's former sales territory); *see also Grella v. St.*

---

[8]      The court in *Sass* considered the plaintiff's testimony "that he never heard of any remarks about his age" as further evidence that he had not established a prima facie case of age discrimination despite alleging replacement by a younger employee.  *Sass*, 153 A.D.3d at 1185.  The same is true here; Plaintiff admits that no one at Mount Sinai ever made comments about an employee's protected characteristics, Defs.' 56.1 Stmt. ¶ 112; Pl.'s 56.1 Resp. ¶ 112, further undermining her prima facie case.

[9]      As noted *infra* note 18, Plaintiff could have, but did not, request documents from Defendants concerning Ms. Sprung's demographic characteristics.  Instead, Plaintiff relied only on what she had been told by her former colleagues about Ms. Sprung.

*Francis Hosp.*, 149 A.D.3d 1046, 1048 (2d Dep't 2017) ("[T]here is a triable issue of fact as to whether the [younger employee hired after plaintiff's termination,] who assumed at least some of plaintiff's former responsibilities, replaced the plaintiff.").

Plaintiff concedes that the email announcing Sprung's hiring did not indicate which shifts the new employees would be working,[10] so her contention that Sprung assumed some of her responsibilities rests solely on her testimony that "former colleagues have advised [her] that Rachel Sprung has been working [her] old shifts."  Marseille Decl. ¶ 81.  Plaintiff's testimony concerning information relayed to her by former coworkers is classic inadmissible hearsay.  *See Konteye v. N.Y.C. Dep't of Educ.*, No. 17-CV-2876, 2019 WL 4418647, at *15, *20 (S.D.N.Y. Apr. 10, 2019) (describing plaintiff's statement that he "was told by one of [his] former colleagues that [a school principal told another school principal] not to hire me" as "a textbook example of hearsay, not admissible in the context of a motion for summary judgment").  Accordingly, Plaintiff has failed to put forth admissible evidence that raises a triable issue of fact as to whether she was replaced by a younger, non-black employee.

In any event, the Court "need not tarry over the question of whether the plaintiff has made out a prima facie case" under the NYCHRL because "the employer has offered admissible evidence to support a legitimate, nondiscriminatory reason for its actions."  *Campbell v. Cellco P'ship*, 860 F. Supp. 2d 284, 299 (S.D.N.Y. 2012); *see also Bennett v. Health Mgmt. Sys., Inc.*, 92 A.D.3d 29, 39–40 (1st Dep't 2011) ("Where a defendant in a discrimination case has moved for summary judgment and has offered evidence in admissible form of one or more non-discriminatory motivations for its actions, a court should ordinarily avoid the unnecessary and

---

[10]      *See* Marseille Dep. at 191 ("Q: And did it say what shifts those people were going to be working, what hours they were going to be working, or did it just say these are two new people who have been hired?  A: Yes, they didn't put the shift, yes.  Q: So if all the e-mail said was that Ms. Sprung is now going to join the unit, how do you know that she replaced you?  A: I was fired.").

sometimes confusing effort of going back to the question of whether a prima facie case has been made out in the first place.").

Defendants have offered admissible evidence to support their non-discriminatory reasons for progressively disciplining and terminating Plaintiff. Defendants maintain that they terminated Plaintiff "solely because of her inadequate documentation that jeopardized the care and safety of a critically ill patient population." Defs.' Reply at 5. In support of their non-discriminatory justification, Defendants have submitted ample evidence,[11] including: three evaluations of Plaintiff between 2013 and 2014 documenting shortcomings — or at least identifying room for improvement — with respect to Plaintiff's documentation practices;[12] O'Dea's First Warning regarding deficient documentation on February 21, 2017;[13] and O'Dea's two Final Warnings (one pending investigation).[14] Defendants also provided evidence that Plaintiff conceded, in writing, on multiple occasions, that she had committed errors in documenting patient care.[15] Collectively, Defendants have more than adequately established a documented, justifiable basis for their discipline and termination of Plaintiff. *See Campbell*, 860 F. Supp. 2d at 289–90, 302 (finding employer "provided legitimate business justifications for its decisions" when its evidence included an email sent to HR by a supervisor "seeking to demote

---

[11]     In addition to the specific examples provided by Defendants, Plaintiff concedes that a PIP had been prepared requiring that her "progress . . . be monitored over a three-month period." Pl.'s 56.1 Resp. ¶ 162; Defs.' 56.1 Reply ¶ 162. She declined to sign the PIP, and it was never put into place. Pl.'s 56.1 Resp. ¶¶ 162, 164; Defs.' 56.1 Reply ¶¶ 162, 164.

[12]     Marseille Dep. Exs. 11, 12, 13; Defs.' 56.1 Stmt. ¶¶ 28, 30, 33–35; Pl.'s 56.1 Resp. ¶¶ 28, 30, 33–35.

[13]     Marseille Dep. Ex. 19; Defs.' 56.1 Stmt. ¶ 56; Pl.'s 56.1 Resp. ¶ 56.

[14]     Marseille Dep. Exs. 29, 30; Defs.' 56.1 Stmt. ¶¶ 79, 93–94; Pl.'s 56.1 Resp. ¶¶ 79, 93–94.

[15]     Marseille Dep. at 59, Ex. 15 (acknowledging that she failed to put a note in a patient's file when, pursuant to hospital policy, she was supposed to); *id.* at 75, Ex. 20 (writing in an email to O'Dea that "I understand that I did not document my care in [the electronic chart system] and it was an oversight"); *see also id.* at 67–71, Ex. 18 (admitting that she did not record a "specific plan" for a patient but disputing whether she was required to do so).

plaintiff" and it was undisputed that plaintiff was placed on a PIP, received low rankings on

performance reviews, and was issued a "Final Written Warning" prior to termination); *Bennett*,

92 A.D.3d at 29, 45–46 (finding defendant provided sufficient "evidence of nondiscriminatory

motivations" when evidence included "numerous reports of plaintiff's unsatisfactory work

performance," "plaintiff's own admission that he was unable to 'master [his] job,'" and the

undisputed fact that plaintiff's supervisor had "advised plaintiff that if his work did not improve,

he would be terminated").

   Finally, Plaintiff has failed to present evidence to suggest that Defendant's non-

discriminatory justification is "mere pretext designed to cover up the employer's actual

discriminatory intent," *Missick v. City of New York*, 707 F. Supp. 2d 336, 347 (E.D.N.Y. 2010),

or that "discrimination was one of [Defendants'] motivating factors," *Hamburg*, 155 A.D.3d at

73.  Plaintiff attempts to demonstrate pretext by setting forth the reasons why "she did

adequately document the care of her patients."  *See* Pl.'s Opp. at 15.  These assertions do not

suffice as evidence of pretext or a discriminatory motive because "in a [NYCHRL]

discrimination case, an attack on the employer's business judgment does not give rise to the

inference that the employee's discharge was due to . . . discrimination."  *Hamburg*, 155 A.D.3d

at 77 (finding plaintiff's arguments that she was capable of performing the job "entirely beside

the point"); *see also Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 312 (2004) (finding it

not "material whether defendants' contemporaneous assessment of plaintiff's recordkeeping

skills was justified" in granting summary judgment to employer); *Bilitch v. N.Y.C. Health &*

*Hosps. Corp.*, 194 A.D.3d 999, 1002 (2d Dep't 2021) (citing, *inter alia*, *Forrest* to establish that

"the question is not whether the [employer's] decision was correct or wise, but whether the

reason for the decision was a pretext for discrimination").[16]

Also undercutting Plaintiff's attempt to demonstrate pretext is that the evaluations and

decisions regarding Plaintiff's discipline and termination involved multiple supervisors and the

Human Resources Department, not just O'Dea, with some negative evaluations predating

O'Dea's tenure as Plaintiff's supervisor. *See* Marseille Dep., Exs. 11, 12, 13; Defs.' 56.1 Stmt.

¶¶ 28, 30, 33–35, 54, 57–58, 92–93; Pl.'s 56.1 Resp. ¶¶ 28, 30, 33–35, 54, 57–58, 92–93. The

shared assessment of Plaintiff's performance shortcomings among "multiple evaluators

undercuts [any] discriminatory inference." *Missick*, 707 F. Supp. 2d at 349.

Plaintiff also points to two letters written by her coworkers supporting Plaintiff's

reinstatement. Dkt. 55-2 at 1–2 (contending that Plaintiff performed her job well and expressing

"surprise[] at her termination and the circumstances under which she has left"). When

presenting "additional evidence showing that the employer's proffered explanation is unworthy

of credence, . . . a fact-finder need not, and indeed should not, evaluate whether a defendant's

stated purpose is unwise or unreasonable, but should instead determine whether the articulated

purpose is the actual purpose for the challenged . . . action." *Grant v. Roche Diagnostics Corp.*,

No. 09-CV-1540, 2011 WL 3040913, at *11 (E.D.N.Y. July 20, 2011) (cleaned up). The

coworkers' letters, which do not actually address the performance shortcomings that led to

---

[16]     Several of Plaintiff's responses, as irrelevant as they are, do not actually refute Defendants' position that
her documentation was inadequate but instead argue that the care she provided was the correct treatment. *See* Defs.'
56.1 Stmt. ¶¶ 52, 80–81, 84, 90–91; Pl.'s 56.1 Resp. ¶¶ 52, 80–81, 84, 90–91. And, as discussed above, on at least
two occasions, she did not dispute that her documentation was inadequate. *See* Marseille Dep. at 59, 75, Exs. 15,
20. "[R]ationalizing . . . errors," however, does not establish pretext under NYCHRL. *Melman*, 98 A.D.3d at 121.

        With respect to Plaintiff's disability discrimination claim, a significant portion of the conduct that
Defendants contend demonstrates Plaintiff's deficient documentation practices occurred *before* Plaintiff became
disabled on March 30, 2017, indicating that Defendants' documented reasons for Plaintiff's termination could not
possibly have been pretext for disability discrimination. *See* Defs.' 56.1 Stmt. ¶¶ 77–78; Pl.'s 56.1 Resp. ¶¶ 77–78.

Plaintiff's termination, may demonstrate that not everyone agreed with the decision to terminate

Plaintiff, but neither letter contains any suggestion that Plaintiff's former colleagues believed or

suspected that Plaintiff's termination was discriminatory.  Accordingly, they do not create a

question of fact whether Defendants' legitimate, documented reasons are subterfuge for

something more nefarious.  *See Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 117 (2d Cir.

2010) ("[D]isagreement with [employer] over whether [employee's] behavior was inappropriate

does not show that [employer's] stated reasons for terminating her were not their true reasons.");

*Melman*, 98 A.D.3d at 121 ("A challenge to the *correctness* of an employer's decision does not,

without more, give rise to the inference that the adverse action was due to . . . discrimination."

(cleaned up)).

Because Plaintiff's evidence fails to suggest that Defendants' non-discriminatory

justifications for her termination were a front for discrimination, a reasonable jury could not find

that the reasons were pretextual.  *See Fenner v. News Corp.*, No. 09-CV-09832, 2013 WL

6244156, at *22 (S.D.N.Y. Dec. 2, 2013) (citing *Beachum v. AWISCO N.Y.*, 785 F. Supp. 2d 84,

98 (S.D.N.Y. 2011) ("The fact that Plaintiff's replacement was not a member of his protected

class, while barely sufficient to establish a prima facie case at the earlier stage, is insufficient to

create a triable issue of fact in light of the lack of any other evidence that Plaintiff's termination

was because of his race [under the NYCHRL]."), *aff'd*, 459 F. App'x 58 (2d Cir. 2012)); *see also*

*Farina v. Branford Bd. of Educ.*, No. 09-CV-49, 2010 WL 3829160, at *6 (D. Conn. Sept. 23,

2010) (deciding that no reasonable jury would find the stated nondiscriminatory reason for

termination to be pretextual when the only evidence of discrimination is replacement by

someone outside of protected class), *aff'd*, 458 F. App'x 13 (2d Cir. 2011).

Plaintiff offers no evidence that Defendants' actions were "motivated, at least in part, by discriminatory bias." *See Hamburg*, 155 A.D.3d at 76.  As noted, Plaintiff has failed to adduce any evidence that O'Dea, or anyone else at Mount Sinai, ever made comments about Plaintiff's or any other employee's protected characteristics, let alone derogatory comments.  Defs.' 56.1 Stmt. ¶ 112; Pl.'s 56.1 Resp. ¶ 112.  Absent such allegations, there is nothing from which the Court can infer that discrimination played *any* role in Defendants' decisions to discipline and ultimately terminate Plaintiff.  *See Hamburg*, 155.A.D.3d at 76 (refusing to consider employer's offered reasons as pretextual because plaintiff "does not recall [employer] ever writing or saying anything that could be interpreted as revealing, either intentionally or inadvertently, the existence of . . . bias").  In short, Plaintiff may not defeat Defendants' "evidentiary showing of legitimate and nondiscriminatory reasons for [disciplining and terminating] her without coming forward with [some] evidence — either direct or circumstantial — from which it could rationally be inferred that . . . discrimination was a motivating factor, even in part, for that decision." *Id.* at 81–82 (cleaned up).

For all of these reasons, Plaintiff has failed to demonstrate that there is a triable issue of fact with respect to her discrimination claims.  Accordingly, Defendants are entitled to summary judgment.

## IV.   Defendants' Motion for Summary Judgment Is Granted as to Plaintiff's NYCHRL Hostile Work Environment Claim

### A.   Legal Standard

Hostile work environment claims brought pursuant to the NYCHRL require a plaintiff to show only that she was subjected to "'unequal treatment' *based upon membership in a protected class.*" *Fattoruso v. Hilton Grand Vacations Co.*, 873 F. Supp. 2d 569, 578 (S.D.N.Y. 2012) (quoting *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 78 (1st Dep't 2009)), *aff'd*, 525 F. App'x

26 (2d Cir. 2013).  "Because claims for hostile work environment and discrimination are governed by the same provision of the NYCHRL, they are analyzed under the same standard."  *Nguedi v. Fed. Rsrv. Bank of N.Y.*, No. 16-CV-636, 2019 WL 1083966, at *10 (S.D.N.Y. Mar. 7, 2019) (quoting *Bacchus v. N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 214, 246 (E.D.N.Y. 2015)), *aff'd*, 813 F. App'x 616 (2d Cir. 2020).  Accordingly, "[e]ven if the plaintiff establishes that she was treated 'less well' because of her [protected characteristic], defendants may assert 'an affirmative defense whereby [they] can still avoid liability if they prove that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider petty slights and trivial inconveniences.'"  *Mihalik*, 715 F.3d at 111 (quoting *Williams*, 61 A.D.3d at 80).  In assessing both a plaintiff's claims and a defendant's affirmative defense, district courts "must consider the 'totality of the circumstances.'"  *Id.* (quoting *Hernandez v. Kaisman*, 103 A.D.3d 106, 115 (1st Dep't 2012)).  Ultimately, the NYCHRL "is not a general civility code," and where a plaintiff fails to demonstrate that the defendant's conduct was caused, "at least in part by discriminatory or retaliatory motives," or the defendant demonstrates that the alleged conduct did not exceed "petty slights or trivial inconveniences," plaintiff's claim must fail.  *Id.* at 113 (citations omitted).

### B.  Application

Plaintiff's hostile work environment claim is premised on her allegations that: (1) "O'Dea told her that [Plaintiff's] 'approach is very aggressive'"; (2) "she was subject to increased scrutiny"; (3) O'Dea told "other NPs to watch Plaintiff and subsequently discipline[d] her for the same conduct and practices that other NPs who were younger, Caucasian and/or non-Haitian and non-disabled were not disciplined [for]."  Pl.'s Opp. at 4, 15–16.  Although not discussed specifically in connection with her hostile work environment claim in Plaintiff's complaint or

opposition brief, *see* Am. Compl. ¶¶ 48–56; Pl.'s Opp. at 15–16, Plaintiff also asserts that O'Dea distributed a schedule to the nursing staff that incorrectly indicated Plaintiff had resigned, and in 2015, O'Dea scheduled Plaintiff to work six consecutive shifts around the holidays.  Pl.'s 56.1 Resp. ¶¶ 145, 170; Defs.' 56.1 Reply ¶¶ 145, 170.[17]

As an initial matter, as to the vast majority of her allegations, Plaintiff fails to adduce any evidence other than self-serving testimony, which plainly does not suffice.  *See Thompson v. Corizon Health, Inc.*, No. 18-CV-7139, 2021 WL 105767, at *1 (S.D.N.Y. Jan. 12, 2021) ("Only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."); *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 831 (S.D.N.Y. 2013) ("A plaintiff alleging discrimination claims cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts or defeat the motion through mere speculation or conjecture." (cleaned up)).  Plaintiff has provided no evidence of a Caucasian, non-Haitian, non-disabled, or younger colleague who received better treatment regarding the scrutiny of documentation, *see* Marseille Dep. at 99–103, or criticism or discipline following poor performance similar to Plaintiff's, *see id.* at 134–38.  Moreover, Plaintiff admits that she never discussed with other employees whether they had been called aggressive, *see id.* at 123–29, and she has put forth no evidence to demonstrate that no colleague of hers was ever scheduled for six consecutive shifts around the holidays, *see id.* at 103–14.  The only evidence she adduced on scheduling was her own testimony that "Maria and Linda w[ere] not scheduled for six day[s] back to back [during the] holidays."  *Id.* at 108–10.

---

[17]     Defendants deny that O'Dea ever called Plaintiff aggressive, more closely scrutinized Plaintiff, or told other NPs to oversee her work.  *See* Defs.' 56.1 Reply ¶¶ 142, 147, 149.  They also claim that O'Dea's distribution of a schedule inadvertently stating that Plaintiff had resigned was a mistake.  *Id.* ¶ 170.  Finally, Defendants assert that O'Dea rescheduled Plaintiff's shifts after Plaintiff requested that she do so.  *Id.* ¶ 145.

"The party opposing the motion [for summary judgment] must set forth 'concrete particulars,'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996), and "support its position by citing to admissible evidence in the record," *Kralik*, 51 F. Supp. 3d at 418.  Here, Plaintiff's ability to defeat Defendants' motion for summary judgment is hampered by a record devoid of any details, including, for example, a schedule demonstrating that colleagues were not scheduled the way she was, personnel records indicating that her coworkers had similar performance shortcomings with regard to documentation but faced no repercussions, or any testimony from coworkers that O'Dea had instructed them to oversee Plaintiff's work.[18]

Putting aside Plaintiff's problems of proof concerning Defendants' alleged conduct, Plaintiff has failed to produce evidence to create a question of fact as to whether she was subjected to a hostile work environment *because of her protected characteristics*.  None of Plaintiff's allegations — save for the wholly unsupported claim that her coworkers who were not members of protected classes were treated more favorably — is based on facially discriminatory conduct.  Accordingly, absent some evidence to link Defendants' conduct to Plaintiff's protected characteristics, Plaintiff has not raised a triable question of fact on her hostile work environment claim.[19]  *See Lennert-Gonzalez v. Delta Airlines, Inc.*, No. 11-CV-1459, 2013 WL 754710, at *8

---

[18]     Putting aside any discovery conducted as part of mandatory mediation in this case, discovery lasted from July 12, 2019, Dkt. 27, through December 27, 2019, Dkt. 32.  During that period, Plaintiff could have deposed coworkers, sought discovery of personnel records and other critical documents from the hospital, and otherwise taken advantage of the Rules of Civil Procedure to develop evidence to support Plaintiff's suppositions.  Counsel's failure to do so is curious, to say the least.

[19]     Because of the similarity between Plaintiff's discrimination and hostile work environment claims under the NYCHRL, the Court incorporates its analysis of those claims found *supra* in section III.  *See Konteye*, 2019 WL 3229068, at *7 ("NYCHRL does not differentiate between discrimination and hostile work environment claims, which means that this Court should perform the same analysis on Plaintiff's hostile work environment claim as it does on his discrimination claim."); *see also Ramirez v. Michael Cetta Inc.*, No. 19-CV-986, 2020 WL 5819551, at *19 (S.D.N.Y. Sept. 30, 2020).

(S.D.N.Y. Feb. 28, 2013) (noting plaintiff failed to connect employer's hostility to her Hungarian

origin by conceding that no one associated with her employer "ever made any derogatory

comment about Hungarians or 'suggested animus towards people of Hungarian national origin'"

(citation omitted)); *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 260–61 (E.D.N.Y.

2012) (granting summary judgment to employer on both NYCHRL discrimination and hostile

work environment claims because plaintiff failed to provide evidence that any differential

treatment was because of her protected characteristics), *aff'd*, 713 F.3d 163 (2d Cir. 2013);

*Fleming v. MaxMara USA, Inc.*, 644 F. Supp. 2d 247, 269 (E.D.N.Y. 2009) (dismissing

NYCHRL hostile work environment claim because "instances of alleged discrimination . . . are

facially race-neutral, and plaintiff has not established an adequate basis permitting a trier of fact

to infer that the alleged discriminatory conduct was motivated by plaintiff's race"), *aff'd*, 371 F.

App'x 115 (2d Cir. 2010).

Finally, even if Plaintiff had connected Defendants' alleged conduct to her protected

characteristics, Defendants' complained-of activities do not rise above the level of "petty slights

and trivial inconveniences."  *Mihalik*, 715 F.3d at 111 (quoting *Williams*, 61 A.D.3d at 80); *see*

*Sosa v. Loc. Staff, LLC*, 618 F. App'x 19, 20 (2d Cir. 2015) (affirming district court's decision

that employer telling a Latino employee "You're so street" is "nothing more than what a

reasonable victim of discrimination would consider [a] petty slight[] and trivial

inconvenience[]"); *Rozenfeld v. Dep't of Design & Constr. of N.Y.C.*, 875 F. Supp. 2d 189, 209

(E.D.N.Y. 2012) (acknowledging "lack of tact and inappropriateness of calling Plaintiff part of a

'mental retard case'" but still finding it to be "nothing more than, at most, [a] petty slight[] or

trivial inconvenience[]" for purposes of NYCHRL hostile work environment claim (citation

omitted)), *aff'd*, 522 F. App'x 46 (2d Cir. 2013); *Forrest*, 3 N.Y.3d at 301, 312 (affirming grant

of summary judgment to employer on hostile work environment claim when plaintiff's complaints included that "a circle had been placed next to her name on a posted time sheet when she was (mistakenly, it turned out) thought to be late"); *Ellison v. Chartis Claims, Inc.*, 178 A.D.3d 665, 669 (2d Dep't 2019) (affirming lower court's grant of summary judgment and finding an isolated instance of calling a co-worker a "bitcher" "constituted no more than [a] petty slight[] or trivial inconvenience[]").

Because Plaintiff has failed to produce evidence to create a question of fact concerning whether she was subjected to a hostile work environment because of her protected characteristics, and because her complaints do not, in any event, rise above the level of "petty slights and trivial inconveniences," summary judgment is granted as to Plaintiff's hostile work environment claims.

**V.  Defendants' Motion for Summary Judgment Is Granted as to Plaintiff's NYCHRL Retaliation Claim**

**A.  Legal Standard**

Retaliation claims brought pursuant to the NYCHRL are evaluated under the familiar *McDonnell Douglas* three-step burden-shifting framework.  *See Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379, 394 (S.D.N.Y. 2019).  A plaintiff establishes a prima facie case of retaliation under the NYCHRL by showing: (1) that she engaged in a protected activity; (2) that her employer knew of the protected activity; (3) that her employer "took an employment action that disadvantaged the plaintiff *in any manner*"; and (4) a causal connection between the protected activity and the negative employment action.  *Corrado v. N.Y. Unified Ct. Sys.*, 163 F. Supp. 3d 1, 25–26 (E.D.N.Y. 2016) (quoting *Sletten v. LiquidHub, Inc.*, No. 13-CV-1146, 2014 WL 3388866, at *4 (S.D.N.Y. July 11, 2014)), *aff'd*, 698 F. App'x 36 (2d Cir. 2017). Unlike retaliation claims brought under federal and state civil rights laws, a NYCHRL plaintiff

need not show a material adverse action but instead can prove a retaliation claim by demonstrating that "she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (cleaned up). "Once a prima facie case of retaliation is established, the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action." *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001). "If the employer carries that burden, then the burden shifts back to the plaintiff, who must establish 'that the employer's action was, in fact, motivated by discriminatory retaliation.'" *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 70 (S.D.N.Y. 2016) (quoting *Raniola*, 243 F.3d at 625).

"Protected activity under the NYCHRL includes any opposition to a discriminatory practice forbidden under the statute.  This requirement is satisfied when a party communicates to the employer defendant, in substance, that she believes the defendant's treatment of her is discriminatory." *Thompson*, 2021 WL 105767, at *6 (cleaned up); *see also Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006) (stating that protected activity element requires only that plaintiff "have had a good faith, reasonable belief that he was opposing an employment practice made unlawful" by relevant anti-discrimination statute (cleaned up)); *Tomizawa v. ADT LLC*, No. 13-CV-6366, 2015 WL 5772106, at *4 (E.D.N.Y. Sept. 29, 2015) (providing that protected activity under the NYCHRL requires that "the defendant and the plaintiff could have reasonably understood that plaintiff's criticism arose from discriminatory treatment").

General complaints about a supervisor's behavior, when there is "no indication . . . that [defendants] knew or should have known" that the behavior was the result of a discriminatory

motive, are not protected activity.  *Id.*; *see also Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 15 (2d Cir. 2013) (stating that a plaintiff's belief that the employer's conduct that plaintiff opposed violated the law "is not reasonable simply because he or she complains of something that appears to be discrimination in some form"); *Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 232 (E.D.N.Y. 2016) ("[G]eneral complaints about employment concerns do not constitute protected activity . . . .").  The burden is on the employee to make clear to the employer "that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally." *Aspilaire v. Wyeth Pharms., Inc.*, 612 F. Supp. 2d 289, 308–09 (S.D.N.Y. 2009).

### B.  Application

Plaintiff has failed to establish a prima facie case of retaliation because she has adduced no evidence demonstrating that she engaged in protected activity.  Plaintiff argues that she suffered retaliation "for her complaint against Ms. O'Dea," "for taking medical leave due to disability," and "because of her age [and] race/national origin."  Pl.'s Opp. at 17.  Neither Plaintiff's membership in protected classes nor her taking disability leave is a "protected activity" for purposes of her retaliation claim.  *Stuart v. T-Mobile USA, Inc.*, No. 14-CV-4252, 2015 WL 4760184, at *11 (S.D.N.Y. Aug. 12, 2015) ("Plaintiff asserts that Defendants terminated her employment in retaliation for being disabled and for taking time off under the FMLA.  Neither of these alleged bases for retaliation, however, constitutes a protected activity under the NYCHRL." (cleaned up)).

That leaves only Plaintiff's complaint about O'Dea's treatment of her, which was asserted in an email that Plaintiff sent to O'Dea, O'Dea's manager, and other hospital employees shortly before she returned to work after extended sick leave.  *See* Dkt. 56-1 at 1.  Plaintiff wrote:

> As I am getting ready to return to work from my FMLA, I need you to be aware of how you inappropriately contacted me several times while I was out.  You made it almost impossible for me to heal from my injuries as I was bombarded with your constant phone calls to my personal phone and my colleague always telling me that you keep asking them about me.
>
> . . . I would like this matter to be discussed on my first day back to work by the entire management team.  At such time, we can address my issues as you mentioned in your email.  I am hoping to be accompanied by my union representative at such time.
>
> I am writing you with the hope that this matter is discussed and necessary actions should be taken to address the matter as I am tired of your constant intimidation over the years.

*Id.*

Plaintiff's email fails to qualify as protected activity as a matter of law because the complaints contained in the email are not "opposing or complaining about unlawful discrimination."[20]  *Forrest*, 3 N.Y.3d at 313.  "Filing a grievance complaining of conduct other than unlawful discrimination . . . is simply not a protected activity subject to a retaliation claim under [NYCHRL]."  *Id.* at 301, 313 n.11 (finding that complaints by plaintiff about being contacted by her employer while on extended vacation taking care of sick family member did not amount to complaints about discrimination).  There is simply no evidence from which a reasonable jury could conclude that Plaintiff's email amounted to a complaint about discrimination as opposed to it being a general complaint about O'Dea's supervision.  *See Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012); *see also Fattoruso v. Hilton Grand Vacations Co., LLC*, 525 F. App'x 26, 28 (2d Cir. 2013) (finding that general complaints were

---

[20]     Anything O'Dea did before Plaintiff's email obviously could not have been in retaliation for Plaintiff's alleged protected activity.

not protected activity and plaintiff's "belief that he was being treated 'unfairly' [does not] transform his complaints . . . into charges over unlawful discrimination").[21]

Even if a very generous reading of Plaintiff's email might reveal an attempt to complain about harassment based on her disability, Plaintiff admits that "she never complained to anyone at Mt. Sinai that she was being discriminated against based on her race, color, age, national origin or disability."  Defs.' 56.1 Stmt. ¶ 131; Pl.'s 56.1 Resp. ¶ 131.  That concession essentially forecloses the possibility that Plaintiff herself considered that email to be protected activity, let alone that Defendants would have perceived it that way.  *See Fattoruso*, 525 F. App'x at 28 (finding plaintiff failed to satisfy second element of prima facie case of retaliation because plaintiff's complaint "did not implicitly or explicitly alert [defendant] that he was complaining of disparate treatment based on [protected characteristics] — and thereby was engaging in a protected activity"); *Albunio v. City of New York*, 16 N.Y.3d. 472, 478 (2011) (finding "nothing in the record to support that [plaintiff] had opposed discrimination" when she "had neither filed a discrimination complaint nor explicitly accused anyone of discrimination before she was ousted").

In any event, even if the email constitutes protected activity, the fact that the progressive discipline that resulted in Plaintiff's termination began long before she sent the email undermines Plaintiff's argument that there was a causal connection between the email and her termination. *See Warmin v. N.Y.C. Dep't of Educ.*, No. 16-CV-8044, 2021 WL 517777, at *10 (S.D.N.Y. Feb. 11, 2021) (finding that plaintiff failed to establish causation in NYCHRL retaliation claim

---

[21]    Plaintiff also asserts in her opposition brief, although not in the section dedicated to her retaliation claims, that O'Dea retaliated against her for telling "O'Dea that she was not using an aggressive tone."  Pl.'s Opp. at 16. Even if the Court considers this statement to be part of Plaintiff's retaliation claim, it similarly fails to create a prima facie case of retaliation, because it was not "sufficiently specific to make it clear that the employee [was] complaining about conduct prohibited by" the anti-discrimination laws.  *Risco*, 868 F. Supp. 2d at 110.

because "Defendants began the process of terminating Plaintiff . . . before he engaged in protected activity"); *Tomizawa*, 2015 WL 5772106, at *7 ("There was a progressive series of disciplinary actions taken against plaintiff that began months *before* he submitted his complaint . . . . This progressive discipline undermines any inference of retaliation." (cleaned up)).

In short, Plaintiff has failed to establish a prima facie case of retaliation, and Defendants are entitled to summary judgment on this claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to close the open motion at Dkt. 48 and to close this case.

 **SO ORDERED.**

Date: **August 5, 2021**          **VALERIE CAPRONI**
**New York, NY**                  **United States District Judge**